FILED

2014 Nov-24  PM 02:09
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM BURDEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Civil Action No. |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC., TRANS | ) | |
| UNION LLC; EQUIFAX INFORMATION | ) | |
| SERVICES, LLC; KROLL FACTUAL DATA, | ) | |
| INC.; DATAQUICK LENDING SOLUTIONS, | ) | |
| INC.;LEXISNEXIS RISK DATA RETRIEVAL | ) | |
| SERVICES, LLC; CREDIT FIRST, N.A.; and | ) | |
| WEBBANK | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW the plaintiff, WILLIAM BURDEN ("Plaintiff"), by and through the undersigned counsel, and for Plaintiff's complaint alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §1681, *et seq*. (Fair Credit Reporting Act).

2.      Congress, when it enacted the FCRA in 1970, mandated the existence and use of reasonable procedures to assure the maximum accuracy of the personal

and financial information compiled concerning consumers and sold to users by consumer reporting agencies ("CRAs").

3.     On December 4, 2003, President George W. Bush signed into law the Fair and Accurate Credit Transactions Act ("FACTA").

4.     This legislation gives consumers unprecedented tools to fight identity theft  and continued access to the most dynamic credit markets in the world. With a free credit report and powerful new tools to fight fraud, consumers have the ability to better protect themselves and their families.[1]

5.     In addition to accounts reported due to identity theft, mixed files are a serious problem in the credit reporting industry.   Mixed files occur when information relating to one consumer is placed in the file of another consumer.

6.     Mixed files create a false description of a consumer's credit history. Further, mixed files result in the disclosure of a consumer's most personal identifying and financial information absent the consumer's knowledge, consent, or permissible purpose.

7.     Mixed files also result in the debt collection harassment of innocent consumers because debt collectors use CRA databases to "skip trace" debtors and locate the alleged debtor's address and telephone number.

---

[1]     http://georgewbush-whitehouse.archives.gov/news/releases/2003/12/20031204-3.html     last visited November 23, 2014.

8.    Mixed files are not a new phenomenon.  Equifax has been on notice of the existence of mixed files for at least thirty (30) years.  *See Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509 (5th Cir. 1982).

9.    Mixed files occur despite consumers' unique personal identifying information, such as Social Security numbers.

10.    Equifax's matching logic allows information to be included in a consumer's file even when the Social Security numbers do not match nine out of nine digits.

11.    In the mid-1990's, the Federal Trade Commission ("FTC") and various state attorney generals' offices, including Alabama, Arkansas, California, Connecticut, Delaware, Florida, Idaho, Illinois, Louisiana, Michigan, Minnesota, Missouri, Nevada, New Hampshire, New Mexico, New York, Ohio, Pennsylvania, Rhode Island, Texas, Utah and Washington charged Equifax with violations of the FCRA.

12.    The government enforcement action required Equifax to improve its procedures and prevent mixed files.  *In re Equifax Credit Information Services, Inc.*, (June 22, 1992); *In the Matter of Equifax Credit Information Services, Inc.*, 12 F.T.C. 577 (Aug. 14, 1995); *In the Matter of Equifax Credit Information Services, Inc.*, 61 Fed. Reg. 15484 (Apr. 8, 1996).

13.    Trans Union has been known to mix consumers' files.

14.     In 2002, a jury found Trans Union violated the FCRA and awarded Judy Thomas $5.3 million ("Thomas verdict").

15.     In her lawsuit, Judy Thomas alleged Trans Union mixed her credit file with another consumer.

16.     Equifax has been known to mix files when consumers' names are similar, but the Social Security numbers match only seven out of nine digits.  *See Apodaca v. Discover Fin. Servs.*, 417 F.Supp. 2d 1220 (D.N.M. 2006).

17.     In 2007, Angela Williams sued Equifax in Florida and alleged the CRA mixed her file with another consumer.

18.     The case was presented to a jury.  The jury entered a verdict in favor of the plaintiff, Angela Williams, for over $2.9 million, including $219,000 in actual damages and $2.7 million in punitive damages.

19.     Since 2007, Equifax has been sued hundreds of times by consumers who alleged Equifax included information in their credit file which belonged to another consumer.

20.     For example, Julie Miller sued Equifax in Oregon.

21.     Julie Miller alleged Equifax mixed her file with another consumer in violation of the FCRA.

22.     The case was presented to a jury.

23.     The jury returned a verdict against Equifax for $18.6 million ("Miller verdict").

24.     Experian knows about the Thomas verdict and Miller verdict.

25.     Experian has been sued hundreds of times for violations of the FCRA.

26.     Experian knows about mixed files.

27.     Despite federal law, Congressional mandates, federal and state government enforcement actions, the Thomas and Miller verdicts,  and hundreds of consumer lawsuits, mixed files remain a significant problem for consumers, including Plaintiff.

28.     Before this lawsuit, Kroll knew about mixed files.

29.     Kroll has been sued before wherein an allegation was made that Kroll sold a consumer report that included information, which belonged information to another consumer.

30.     Before this lawsuit, Data Quick knew about mixed files.

31.     Data Quick has been sued before wherein an allegation was made that Data Quick sold a consumer report that included information, which belonged information to another consumer.

32.     Before this lawsuit, Lexis Nexis knew about mixed files.

33.    Lexis Nexis has been sued before wherein an allegation was made that Lexis Nexis sold a consumer report that included information, which belonged information to another consumer.

34.    False information in a consumer's file harms the consumer.

35.    False information in a consumer's file misleads creditors as to the consumer's creditworthiness.

36.    False information in a consumer's file misleads creditors as to the consumer's credit history.

37.    The sale of American's most private and sensitive personal and financial information is a multi-billion dollar industry for the CRAs.

38.    In 2013, Experian received over $4.7 billion dollars in revenue.[2]

39.    In 2013, Equifax received over $2.3 billion dollars in revenue.[3]

40.    In 2013, Trans Union received over $1.1 billion dollars in revenue.[4]

41.    The instant lawsuit seeks compensatory, statutory and punitive damages, costs of suit and attorneys' fees for Plaintiff, resulting from the defendants' failure to comply with the FCRA.

## JURISDICTION & VENUE

---

[2] http://www.experianplc.com/~/media/Files/E/Experian-V2/pdf/results-and-presentations/2013/presentations-09-05-2013.pdf last visited November 22, 2014

[3] http://investor.equifax.com last visited November 22, 2014.

[4] http://www.transunion.com/docs/rev/aboutTransunion/investor-relations/Q4-2013_Earnings_Release.pdf last visited November 22, 2014.

42.     This Court has jurisdiction pursuant to 15 U.S.C. §1681p.

43.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b).

## PARTIES

44.     Plaintiff WILLIAM BURDEN ("Plaintiff") is an adult individual resident of this judicial district. Plaintiff is a "consumer" as defined by 15 U.S.C. §1681a(c).

45.     Defendant Equifax Information Services, LLC ("Equifax") is a Georgia corporation with its principal place of business in the state of Georgia. Equifax does business in this judicial district.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. §1681a(f).  Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. §1681a(f) to third parties.  Equifax disburses such consumer reports to third parties of contract for monetary compensation.

46.     Defendant Experian Information Solutions, Inc. ("Experian") is an Ohio corporation with its principal place of business in the state of California. Experian does business in this judicial district. Experian is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. §1681a(f).  Experian regularly engages in the business of assembling, evaluating, and disbursing information

7

concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. §1681a(f) to third parties.  Experian disburses such consumer reports to third parties of contract for monetary compensation.

47.   Defendant TransUnion LLC ("Trans Union") is a Delaware corporation with its principal place of business in the state of Illinois.  Trans Union does business in this judicial district. Trans Union is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. §1681a(f).   Trans Union regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. §1681a(f) to third parties.  Trans Union disburses such consumer reports to third parties of contract for monetary compensation. Equifax, Experian and Trans Union are referred to collectively as "Defendants" throughout the complaint.

48.   Equifax, Experian and Trans Union are referred to collectively throughout the Complaint as the "nationwide CRA Defendants."

49.   Kroll Factual Data, Inc. ("Kroll"), is a foreign corporation with its principal place of business, upon information and belief, in the state of Colorado. Kroll does business in this judicial district.  Kroll is a consumer reporting agency ("CRA") as defined by 15 U.S.C. 1681a(f) and a reseller of credit information.

50.     Kroll regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined by 15 U.S.C. §1681a(f) to third parties.  Further, Kroll disburses consumer reports to third parties of contract for monetary compensation.

51.     Kroll, in its capacity as a consumer reporting agency and reseller of consumer information, obtains consumer credit information from the nationwide CRA Defendants.  The consumer credit information maintained for individual consumers by the nationwide CRA Defendants includes public record information, collection accounts, trade accounts, personal identifying information and inquiries. Once Kroll receives the requested consumer credit information, it assembles and merges the information into a Kroll credit report.  Kroll sells the credit report to third parties.  In the credit reporting industry, this is known as a "tri-merge" credit report.

52.     Kroll sells "consumer reports" concerning individuals who apply for credit, including mortgages.

53.     Dataquick Lending Solutions, LLC ("Data Quick"), is a foreign corporation with its principal place of business, upon information and belief, in the state of Delaware.  Data Quick does business in this judicial district.  Data Quick is a consumer reporting agency ("CRA") as defined by 15 U.S.C. 1681a(f) and a reseller of credit information.

54.    Data Quick regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined by 15 U.S.C. §1681a(f) to third parties. Further, Data Quick disburses consumer reports to third parties of contract for monetary compensation.

55.    Data Quick, in its capacity as a consumer reporting agency and reseller of consumer information, obtains consumer credit information from the nationwide CRA Defendants.  The consumer credit information maintained for individual consumers by the nationwide CRA Defendants includes public record information, collection accounts, trade accounts, personal identifying information and inquiries.   Once Data Quick receives the requested consumer credit information, it assembles and merges the information into a Data Quick credit report.  Data Quick sells the credit report to third parties.  In the credit reporting industry, this is known as a "tri-merge" credit report.

56.    Data Quick sells "consumer reports" concerning individuals who apply for credit, including mortgages.

57.    LexisNexis Risk Data Retrieval Services, LLC ("Lexis Nexis"), is a foreign corporation with its principal place of business, upon information and belief, in the state of Georgia.  Lexis Nexis does business in this judicial district.

Lexis Nexis is a consumer reporting agency ("CRA") as defined by 15 U.S.C. 1681a(f) and a reseller of credit information.

58.    Lexis Nexis regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined by 15 U.S.C. §1681a(f) to third parties. Further, Lexis Nexis disburses consumer reports to third parties of contract for monetary compensation.

59.    Lexis Nexis, in its capacity as a consumer reporting agency and reseller of consumer information, obtains consumer information from the nationwide CRA Defendants.  The consumer information maintained for individual consumers by the nationwide CRA Defendants includes public record information, collection accounts, trade accounts, personal identifying information and inquiries. Once Lexis Nexis receives the requested consumer information, it assembles and merges the information into a Lexis Nexis consumer report.  Lexis Nexis sells the consumer reports to third parties.

60.    Lexis Nexis sells consumer reports concerning individuals who apply for insurance.

61.    Credit First, N.A. ("Credit First") is a person who furnishes information to consumer reporting agencies as defined by 15 U.S.C. §1681a(f).  In

all respects and all times relevant herein, Credit First was doing business in this judicial district.

62.    WebBank ("Web Bank") is a person who furnishes information to consumer reporting agencies as defined by 15 U.S.C. §1681a(f).  In all respects and all times relevant herein, Web Bank was doing business in this judicial district.

FACTUAL ALLEGATIONS

63.    In or around November 2012, Kroll provided a consumer report to Consumer First Mortgage in connection with Plaintiff's application for credit.

64.    Consumer First Mortgage denied Plaintiff's application for credit.

65.    The credit report Kroll provided to Consumer First Mortgage included the false information detailed below.

66.    The information was false because it belonged to another consumer.

67.    Before Kroll sold Plaintiff's credit report, Kroll did not reconcile inconsistencies in the report.

68.    Kroll failed to assure the maximum accuracy of the consumer report concerning Plaintiff that it supplied to persons.

69.    In the summer of 2013, Plaintiff requested free annual disclosures (commonly referred to as "credit reports") from Equifax, Experian and Trans Union.

70.    The credit reports provided to Plaintiff by the nationwide CRA Defendants included false information.

71.    The false information includes but is not limited to: personal identifying information; public records; account ownership; and inquiries.

72.    More specifically, the false information includes the following information that does not belong to Plaintiff: (1) Credit First National Association/Firestone; (2) Web Bank/Fingerhut; (3) a judgment in favor of Beneficial Illinois in the amount of $7,032.02 in Wisconsin Circuit Court; (4) and inquiries on behalf of these companies.

73.    The information is false because Plaintiff does not:  (1) have an account with Credit First or Web Bank/Fingerhut; (2) have a judgment entered against him in favor of Beneficial Illinois; and did not authorize the inquiries described in the preceding paragraph.

74.    The false information harms Plaintiff's credit reputation because it does not accurately depict his credit worthiness.

75.    Equifax prepared and issued credit reports to third parties concerning Plaintiff that included false information.  Plaintiff notified Equifax that he disputed the accuracy of the information.  Equifax continued to report false information. Plaintiff requested his free credit report from Equifax and requested Equifax to hide the first five (5) digits of his Social Security number.  On at least one occasion

Equifax failed to send Plaintiff his credit report. On at least two occasions, Equifax failed to hide the first five digits of Plaintiff's Social Security number. On at least one occasion, Equifax failed to send Plaintiff the results of its reinvestigation. Equifax provided Plaintiff's credit report to third parties when Equifax received request for another consumer's credit report.

76.    Experian prepared and issued credit reports to third parties concerning Plaintiff that included false inaccurate information. Plaintiff notified Experian that he disputed the accuracy of the information. Experian continued to report false information. Plaintiff requested his credit report from Experian due to fraud. Experian failed to timely provide Plaintiff with his credit report pursuant to his request.

77.    Trans Union prepared and issued credit reports concerning Plaintiff that included false information. Plaintiff notified Trans Union that he disputed the accuracy of the information. Trans Union continued to report inaccurate information. Plaintiff requested his credit report from Trans Union due to fraud. Trans Union failed to timely provide Plaintiff with his credit report pursuant to his request. Trans Union provided Plaintiff's credit report to third parties when Trans Union received request for another consumer's credit report.

78.    Kroll prepared and issued at least one credit report concerning Plaintiff that included false information.

79.     More specifically, in or around November 2012, Kroll provided Consumer First Mortgage with a credit report pertaining to Plaintiff.

80.     The credit report described included false information.

81.     Prior to Kroll's sale of a consumer report about Plaintiff, Kroll did nothing to reconcile inconsistent information from the three nationwide CRAs.

82.     Kroll did nothing to investigate the conflicting information received from Equifax, Experian and Trans Union.

83.     Data Quick prepared and issued at least one credit report concerning Plaintiff that included false information.

84.     More specifically, in or around February 2014, Data Quick provided Consumer First Mortgage with a credit report pertaining to Plaintiff.

85.     The credit report described included false information.

86.     Prior to Data Quick's sale of a consumer report about Plaintiff, Data Quick did nothing to reconcile inconsistent information from the three nationwide consumer reporting agencies.

87.     Data Quick did nothing to investigate the conflicting information received from Equifax, Experian and Trans Union.

88.     Lexis Nexis prepared consumer reports concerning Plaintiff that included false information.

89.     More specifically, in or around January 2013, Lexis Nexis provided Infinity Insurance Company with a consumer report pertaining to Plaintiff.

90.     The consumer report described in the preceding paragraph included false information.

91.     Prior to Lexis Nexis' sale of a consumer report about Plaintiff, Lexis Nexis did nothing to reconcile inconsistent information from the three nationwide consumer reporting agencies.

92.     Lexis Nexis did nothing to investigate the information provided to Infinity Insurance Company.

93.     In or around July 2013, Lexis Nexis provided Cotton States Insurance Company with a consumer report pertaining to Plaintiff.

94.     The consumer report described in the preceding paragraph included false information.

95.     Prior to Lexis Nexis' sale of a consumer report about Plaintiff, Lexis Nexis did nothing to reconcile inconsistent information from the three nationwide CRAs.

96.     Lexis Nexis did nothing to investigate the information supplied to Cotton States Insurance Company.

97.     In or around January 2013, Lexis Nexis provided One GMAC Insurance with a consumer report pertaining to Plaintiff.

98.    The consumer report described in the preceding paragraph included false information.

99.    Prior to Lexis Nexis' sale of a consumer report about Plaintiff, Lexis Nexis did nothing to reconcile inconsistent information from the three nationwide consumer reporting agencies.

100.   Lexis Nexis did nothing to investigate the information provided to One GMAC Insurance.

101.   Plaintiff disputed an account with Credit First to at least one of the CRA Defendants.

102.   Equifax, Experian or Trans Union, or all three, provided notice of Plaintiff's dispute to Credit First.

103.   Credit First failed to perform a reasonable investigation of the disputed information.

104.   Credit First did not contact Plaintiff for additional information.

105.   Credit First did not contact third parties for additional information.

106.   Credit First did not review underlying account documents in response to notice of Plaintiff's dispute from Equifax, or Experian, or Trans Union, or all three.

107.   Plaintiff disputed an account with Web Bank/Fingerhut to at least one CRA Defendant.

108.   Equifax, Experian, Trans Union, or all three, provided notice of Plaintiff's dispute to Web Bank.

109.   Web Bank failed to perform a reasonable investigation of the disputed information.

110.   Web Bank did not contact Plaintiff for additional information.

111.   Web Bank did not contact third parties for additional information.

112.   Web Bank did not review underlying account documents in response to notice of Plaintiff's dispute from Equifax, or Experian, or Trans Union, or all three.

113.   At all times relevant hereto, Equifax, Experian, Trans Union, Kroll, Data Quick, Lexis Nexis, Credit One and Web Bank, acted through their agents, servants and/or employees who were acting within the scope of their employment or agency, or both, and under the direct supervision of the defendants.

114.   The defendants' unlawful conduct proximately caused Plaintiff's actual damages, including but not limited to: harm to credit reputation; reduction in credit score; unfavorable credit terms; invasion of privacy; emotional distress and mental anguish; out-of-pocket expenses; interference with normal and usual activities; and time.

### COUNT 1 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(against Equifax)
(Negligent Noncompliance with FCRA)

115.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

116.   Equifax negligently failed to comply with the requirements of the FCRA.

117.   As a result of Equifax's failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury.

118.   Plaintiff requests fees pursuant to 15 U.S.C. §1681o(a).

COUNT 2 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against Equifax)
(Willful Noncompliance with FCRA)

119.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

120.   Equifax willfully failed to comply with the requirements of the FCRA.

121.   As a result of Equifax's failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to

reputation, invasion of privacy, emotional distress and interference with plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

122.   Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n(a).

COUNT 3 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against Experian)
(Negligent Noncompliance with the FCRA)

123.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

124.   Experian negligently failed to comply with the requirements of the FCRA.

125.   As a result of Experian's failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury.

126.   Plaintiff requests fees pursuant to 15 U.S.C. §1681o(a).

127.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

128.   Experian willfully failed to comply with the requirements of the FCRA.

### COUNT 4 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against Experian)
(Willful Noncompliance with the FCRA)

129.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

130.   Experian willfully failed to comply with the requirements of the FCRA.

131.   As a result of Experian's failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

132.   Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n(a).

### COUNT 5 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against Trans Union)
(Negligent Noncompliance with the FCRA)

133.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

134.   Trans Union negligently failed to comply with the requirements of the FCRA.

135.   As a result of Trans Union's failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury.

136.   Plaintiff requests fees pursuant to 15 U.S.C. §1681o(a).

COUNT 6 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against Trans Union)
(Willful Noncompliance with the FCRA)

137.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

138.   Trans Union willfully failed to comply with the requirements of the FCRA.

139.   As a result of Trans Union's failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with plaintiff's normal and usual activities for which plaintiff seeks damages in an

amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

140.   Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n(a).

COUNT 7 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against KROLL)
(Negligent Noncompliance with the FCRA)

141.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

142.   Kroll negligently failed to comply with the requirements of Section 1681e(b) of the FCRA.

143.   As a result of Kroll's failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury.

144.   Plaintiff requests fees pursuant to 15 U.S.C. §1681o(a).

COUNT 8 - VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against KROLL)
(Willful Noncompliance with the FCRA)

145.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

146.   Kroll willfully failed to comply with the requirements of Section 1681e(b) of the FCRA.

147.   As a result of Kroll's failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

148.   Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n(a).

COUNT 9 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against DATA QUICK)
(Negligent Noncompliance with the FCRA)

149.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

150.   Data Quick negligently failed to comply with the requirements of Section 1681e(b) the FCRA.

151.   As a result of Data Quick's failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with plaintiff's

normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury.

152.   Plaintiff requests fees pursuant to 15 U.S.C. §1681o(a).

COUNT 10 - VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against DATA QUICK)
(Willful Noncompliance with the FCRA)

153.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

154.   Data Quick willfully failed to comply with Section 1681e(b) of the requirements of Section 1681e(b) of the FCRA.

155.   As a result of Data Quick's failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

156.   Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n(a).

COUNT 11 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against LEXIS NEXIS)
(Negligent Noncompliance with the FCRA)

157.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

158.   Lexis Nexis negligently failed to comply with the requirements of Section 1681e(b) of the FCRA.

159.   As a result of Lexis Nexis' failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury.

160.   Plaintiff requests fees pursuant to 15 U.S.C. §1681o(a).

### COUNT 12 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against LEXIS NEXIS)
(Willful Noncompliance with the FCRA)

161.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

162.   Lexis Nexis willfully failed to comply with the requirements of Section 1681e(b) of the FCRA.

163.   As a result of Lexis Nexis' failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to

reputation, invasion of privacy, emotional distress and interference with plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

164.   Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n(a).

COUNT 13 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against CREDIT FIRST)
(Negligent Noncompliance with the FCRA)

165.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

166.   Credit First negligently failed to comply with the requirements of Section 1681s-2(b) of the FCRA.

167.   As a result of Credit First's failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury.

168.   Plaintiff requests fees pursuant to 15 U.S.C. §1681o(a).

COUNT 14 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against CREDIT FIRST)
(Willful Noncompliance with the FCRA)

169.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

170.   Credit First willfully failed to comply with the requirements of Section 1681s-2(b) of the FCRA.

171.   As a result of Credit First's failure to comply with the requirements of the FCRA, plaintiff ha-s suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

172.   Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n(a).

COUNT 15 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against WEB BANK)
(Negligent Noncompliance with the FCRA)

173.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

174.   Web Bank negligently failed to comply with the requirements of Section 1681s-2(b) of the FCRA.

175.   As a result of Web Bank's failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including

economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury.

176.   Plaintiff requests fees pursuant to 15 U.S.C. §1681o(a).

### COUNT 16 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against WEB BANK)
(Willful Noncompliance with the FCRA)

177.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

178.   Web Bank willfully failed to comply with the requirements of Section 1681s-2(b) of the FCRA.

179.   As a result of Web Bank's failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

180.   Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n(a).

181.   Plaintiff requests a jury trial on all claims.

PRAYER

Wherefore, Plaintiff prays for judgment against Defendants as follows:

On the First Claim for Relief:

1.      Actual damages to be determined by the jury; and

2.      Attorneys' fees and costs.

On the Second Claim for Relief:

1.      Actual damages to be determined by the jury;

2.      Punitive damages to be determined by the jury;

3.      Statutory damages to be determined by the jury; and

4.      Attorneys' fees and costs.

On the Third Claim for Relief:

1.      Actual damages to be determined by the jury; and

2.      Attorneys' fees and costs.

On the Fourth Claim for Relief:

1.      Actual damages to be determined by the jury;

2.      Punitive damages to be determined by the jury;

3.      Statutory damages to be determined by the jury; and

4.      Attorneys' fees and costs.

On the Fifth Claim for Relief:

1.      Actual damages to be determined by the jury; and

2.      Attorneys' fees and costs.

On the Sixth Claim for Relief:

1.      Actual damages to be determined by the jury;

2.      Punitive damages to be determined by the jury;

3.      Statutory damages to be determined by the jury; and

4.      Attorneys' fees and costs.

On the Seventh Claim for Relief:

1.      Actual damages to be determined by the jury; and

2.      Attorneys' fees and costs.

On the Eighth Claim for Relief:

1.  Actual damages to be determined by the jury;

2.  Punitive damages to be determined by the jury;

3.  Statutory damages to be determined by the jury; and

4.  Attorneys' fees and costs.

On the Ninth Claim for Relief:

1.      Actual damages to be determined by the jury; and

2.      Attorneys' fees and costs.

On the Tenth Claim for Relief:

1.  Actual damages to be determined by the jury;

2.  Punitive damages to be determined by the jury;

3.  Statutory damages to be determined by the jury; and

4.  Attorneys' fees and costs.

On the Eleventh Claim for Relief:

1.      Actual damages to be determined by the jury; and

2.      Attorneys' fees and costs.

On the Twelfth Claim for Relief:

1.  Actual damages to be determined by the jury;

2.  Punitive damages to be determined by the jury;

3.  Statutory damages to be determined by the jury; and

4.  Attorneys' fees and costs.

On the Thirteenth Claim for Relief:

1.      Actual damages to be determined by the jury; and

2.      Attorneys' fees and costs.

On the Fourteenth Claim for Relief:

1.  Actual damages to be determined by the jury;

2.  Punitive damages to be determined by the jury;

3.  Statutory damages to be determined by the jury; and

4.  Attorneys' fees and costs.

On the Fifteenth Claim for Relief:

1.      Actual damages to be determined by the jury; and

2.      Attorneys' fees and costs.

On the Sixteenth Claim for Relief:

1. Actual damages to be determined by the jury;

2. Punitive damages to be determined by the jury;

3. Statutory damages to be determined by the jury; and

4. Attorneys' fees and costs.

Dated:      November 24, 2014

Respectfully submitted,

/s/ Micah S. Adkins
Micah S. Adkins (ASB-8639-I48A)
**THE ADKINS FIRM, P.C.**
301 19th Street North, Suite 581
The Kress Building
Birmingham, Alabama 35203
Telephone:  205.458.1202
Facsimile:  205.208.9632
Email:      MicahAdkins@ItsYourCreditReport.com